IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:22-CR-115 |
| | ) | |
| ROLMAN BALCARCEL-BAVAGAS, | ) | |
| | ) | |
| *Defendant.* | ) | |

**Defendant's Position on Sentencing**

COMES NOW the defendant Rolman Alberto Balcarcel Ac[1], by counsel and for his position on sentencing respectfully requests that the Court sentence him to time served, which, at over four months, is more than two thirds of the high end of his 0-6 months Guideline Range. Mr. Balcarcel fled gang violence in his home country of Guatemala and came to the United States, where he has lived and worked peacefully, with no criminal record and always sending money home to support his children. The gang violence which caused him to flee has also caused a loss of contact with his parents and siblings, as the source of that violence was the gang's desire to extort money from Mr. Balcarcel's parents, and Mr. Balcarcel has chosen to avoid his family in order to protect them. In such circumstances, and considering all of the § 3553(a) factors as described below, a sentence of time served is sufficient but not greater than necessary to effectuate the statutory purposes.

---

[1] The defendant was charged under the name Rolman Balcarcel-Bavagas. He admits that he is the person named in the indictment. His birth certificate states his name as Rolman Alberto Balcarcel Ac. PSR at para 32. He will be referred to herein as Mr. Balcarcel.

1

## Case History and Sentencing Guidelines

While living and working peacefully in the United States, Mr. Balcarcel had the misfortune of being identified in a "tip" provided to law enforcement. PSR at ¶ 8. The substance of that "tip" is discussed at paragraph 8 of the PSR, and at page 5 of the Government's Sentencing Position (Dkt 26). The Government has advised the Probation Office that "consideration of the tipster's report as part of the overall assessment of the statutory sentencing factors in this case is not warranted." PSR at ¶ 8. Defendant agrees with this position and thus discusses below only those factors which the parties agree should properly be assessed at sentencing, most importantly his reasons for leaving Guatemala, work and other lawful behavior while in the United States, and of course the Guidelines, which place his sentencing range at 0-6 months.

After coming into contact with law enforcement on July 1, 2022, Mr. Balcarcel promptly took full responsibility for his unlawful immigration status. He was detained in state custody on July 5, indicted on the present charges on August 2 (Dkt. 4) and transferred to the Marshal's custody on August 5, PSR at p 1. He promptly pleaded guilty on August 25 and "clearly demonstrated acceptance of responsibility." PSR at ¶ 22.

Mr. Balcarcel agrees with the Probation Office calculation of his Sentencing Guidelines, which set his Base Offense Level at 8, less two points for Acceptance of Responsibility, for an Adjusted Offense Level of 6. PSR at ¶ 20-22. His Criminal history score is zero. PSR at ¶ 26. Thus his Guideline Range is 0-6 months. PSR at ¶¶ 75. When he comes before the Court on November 10, he will have served slightly more than four months, or over two thirds of the Guideline maximum.

**Background Regarding the Defendant**

In the horrific social climate that prevails in many parts of his home country Guatemala, family circumstances that might have provided an advantage to Mr. Balcarcel turned out to be his undoing. Mr. Balcarcel was raised in a "middle income, working class environment," with a father who worked, and earned enough money to allow his mother to stay home to care for him and his 4 siblings. PSR at ¶ 40. He grew up in a large multiroom home with electricity and running water, with parents who remained married and resided together during his upbringing and up to the present. PSR at para 39. His family "never struggled financially," and his basic needs were always met. PSR at para 40.

But his family's financial resources proved attractive to organized crime members, who attempted to entice him to work for them. PSR at para 43. When he continued to refuse:

> He was accosted by several individuals until he was unconscious and then he was run over by a motorcycle. . . . [H]e suffered wounds to his face, mouth and cheeks. . . . [H]e also sustained broken teeth, damaged arm and ribs, as well as a broken finger and a brain injury during the attack.

PSR at para 43. He was left for dead, but eventually was taken to the hospital. *Id.*

This brutal treatment is documented by hospital records, which confirm that he was hospitalized from May 25 to June 18, 2006 "due to traumatic brain injury grade II and injuries from blunt force wounds on the face and body." PSR at para 54.

To escape this violence, Mr. Balcarcel left Guatemala for the United States in 2007. PSR at para 44. He was removed in 2013[2] and went to Mexico, where, ultimately, similar violence ensued again, at the hands of gang members who "wanted his parents telephone numbers so they

---

[2] He was removed a second time on or about August 8, 2014. PSR at ¶ 7(9)

could get a ransom" which numbers he never provided. PSR at para 44. He went back to Guatemala for a week, borrowed money for a "coyote" from his uncle, and returned to the United States. PSR at ¶ 44.

For fear of leading crime members to his family, Mr. Balcarcel has not maintained contact with his family in Guatemala. PSR at para 33-36 and 38. He does maintain contact with his brother, who lives in the United States. PSR at para 37.

Mr. Balcarcel has four children, fathered with three different women. PSR at ¶ 47. He has regularly sent from $100 to $300 per month each to support three of his children. PSR at ¶¶ 49-51.

This financial assistance to his family has been made possible by the employment opportunities Mr. Balcarcel has found in the United States. He has worked as an electrician during his entire time in the United States, most recently at the Morris Company in Charlottesville, and before that at Hernandez Contractors in Richmond. PSR at ¶¶ 65-67.

## Position on Sentencing

The Government and the Defendant both agree that a Guideline sentence is appropriate, with the Government requesting the very top end, six months, and the defendant requesting a time served sentence of over two thirds of the top end, or slightly longer than four months,

As to the question of a guideline sentence, although "effectively advisory," *United States v. Booker*, 543 U.S. 220, 245 (2005), the United States Sentencing Guidelines are a critical input in determining sentences. *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006); *see also United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006). Indeed, the Guidelines "seek to embody the Section 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338, 350 (2007). Thus, a sentencing court "must consult [the] Guidelines and

take them into account when sentencing" to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (internal quotation omitted); *United States v. Biheiri*, 356 F. Supp. 2d 589, 593 (E.D. Va. 2005).

As to the question of where within the Guidelines an appropriate sentence would fall, defendant respectfully submits that his case is less serious than other similar cases that would give rise to the same 0-6 month Guideline range, and thus that he should receive a sentence lower than the Guideline maximum. He pleaded guilty and received acceptance of responsibility points – even though a denial of those points would have generated the same Guideline range. He has never before had a criminal conviction of any type, neither for his prior two illegal entries nor for anything else. He has worked to send money to his children. And his illegal entry was for the purpose of avoiding violence.

**1.     The Nature and Circumstances of the Offense**

Mr. Balcarcel respectfully submits that the nature and circumstances of his offense are simply not such that the very high end of the guidelines would be warranted. First, he cooperated with the Government, promptly admitting his offense on August 25, after being indicted on August 2. This prompt admission lowered his offense level from 8 to 6, but it did not move his Guidelines, which would have been zero to six months even if the offense level had remained at 8. To give him a sentence at the very high end would treat him the same as a defendant who had refused to accept responsibility. In the language if § 3553(a), the "nature and circumstances" of Mr. Balcarcel's offense are less serious than one who insisted on going to trial and was convicted, and his sentence should reflect that fact.

The Government says that the nature and circumstances of the offense warrant a high end sentence because Mr. Balcarcel has previously been removed from the United States not just once, as has every defendant charged under 8 U.S.C. § 1326, but twice. Government Position on Sentencing, Dkt. 26 at 5. The Government is certainly correct that the nature and circumstances of the offense are more serious for a defendant with two prior removals than for a defendant with only one, but it does not follow that the two prior removals make the nature and circumstances of Mr. Balcarcel's offense so serious that he deserves the absolute top end of the Guidelines. For example, while Mr. Balcarcel's initial removals were civil matters, some § 1326(a) defendants are removed for the first time some pursuant to criminal procedures under 8 U.S.C. § 1325. This Court has held that defendants who were previously removed pursuant to criminal procedures are properly treated more harshly under the Guidelines than defendants whose first removal was civil. *See United States v. Rodesno-Lopes*, 3:21-cr-123, Dkt. 33 (denying defendants' motion for a downward variance, which had argued that defendant whose first removal was criminal should be treated the same as one whose first removal was civil). The converse is also true – a defendant whose first removal(s) was civil, such as Mr. Balcarcel, should be treated more leniently than a defendant whose first removal was criminal. Since the criminal removal for a similarly situated defendant would generate a criminal history point, but the same Guideline range of zero to six months, it follows that a defendant with a zero to six month Guideline range but no prior criminal removals should receive a lower sentence than a defendant with the same Guideline range but a prior criminal removal.

  The nature and circumstances of Mr. Balcarcel's offense are simply not the most serious that one can imagine for a defendant convicted of a §1326(a) offense with a Guideline range of 0-6 months, and he should not therefore be sentenced to the absolute high end.

2. **History & Characteristics of Mr. Balcarcel**

Neither the Probation Office nor the Government have taken issue with Mr. Balcarcel's claim that he entered the United States in large part to escape violence at the hands of organized crime. The PSR recounts Mr. Balcarcel's version of these events and backs them up with hospital records and reports of physical scars on his body. PSR at ¶¶ 43, 44 and 54. The Government acknowledges that "At the age of 19, the defendant began having problems with local organized crime members in his city, culminating in the defendant being severalty beaten for refusing to work for the organization." Government's Sentencing Position, Dkt. 26 at 6 (citing PSR at ¶ 43). This is a critical aspect of his history and characteristics that warrants a sentence lower than the Guideline maximum. Mr. Balcarcel readily acknowledges that fleeing violence does not make his entry lawful, and that, indeed, he failed to follow the lawful procedures for gaining admission to the United States in such a case. But this flight is certainly an aspect of his history and characteristics that should be weighed in his favor when deciding where within the Guideline range he should be sentenced. Similarly, the Court should also take note of the fact that it was his parents means that apparently formed the motivation for the gang violence in the first place. While Mr. Balcarcel was not fleeing abject poverty as are many § 1326 defendants, he was fleeing violence that took place as a result of circumstances that might otherwise have provided him an advantage.

The Court should also weigh Mr. Balcarcel's lack of any criminal convictions at all and resulting Criminal History score of zero. PSR at ¶ 26. If he had one criminal history point, whether resulting from a prior criminal removal under § 1325 as discussed above, or any other offense, he would still be in Criminal History Category I, with a Guideline range of 0-6 months.

Thus, again, he is not "the worst" one can imagine in the 0-6 month range, and thus should not receive the very highest Guideline sentence.

### 3. Adequate Deterrence to Criminal Conduct

Mr. Balcarcel has never before been convicted of a crime. For this first offender, a time served sentence of over four months in prison will suffice to deter him from re-entering the United States.

The Government is of course correct that he has entered twice before and should be deterred from entering again. Government's Sentencing Position, Dkt. 26 at 7. But there is no reason why a sentence at the very top end of the range needs to be imposed to effectuate this deterrence. For the first time in his 38 years Mr. Balcarcel has served a substantial jail sentence, and there is no reason to believe the sentence served to date, at more than two thirds of the high end, will not suffice to deter him.

### 5. Need to Protect the Public.

The public of the United States will be protected, not just through the already served sentence of four months, but also through Mr. Balcarcel's impending deportation.

### 6. The Seriousness of the Offense Conduct, the Need to Provide Just Punishment and Promote Respect for the Law.

For the same reasons explained above, a time served sentence of over four months would suffice to reflect the seriousness of the offense, provide just punishment and promote respect for the law. Mr. Balcarcel's offense is not the most serious offense that one could imagine that would generate a 0-6 month Guideline range, and he therefore does not deserve that absolute maximum sentence to reflect the seriousness of that offense, provide just punishment or promote respect for the law.

### 7. The Need to Avoid Unwarranted Sentencing Disparities

To sentence Mr. Balcarcel at the very high end would create unwarranted sentencing disparities. Again, the nature of his offense is less serious than others convicted of the same crime whose Guideline range is 0-6 months (for example those who go to trail and thus have an offense level of 8, not 6); this is his first offense, but others with one criminal history point would have the same Guideline range; and he came here illegally to escape violence. To sentence him at the very high end would treat his case the same as more serious cases and thus create an unwarranted disparity.

## Commencement of Sentence

In the alternative, should the Court impose any sentence greater than time served, the Court should enter an order making clear that Mr. Balcarcel's sentence began to run on July 5, 2022, the date he was taken into state custody. The record clearly shows one continuous incarceration that arose out of the same events – the tip that gave rise to the Richmond Police Department's visit to his home on July 2. He has been continuously held since that time and should receive credit therefor.

## Conclusion

For the reasons stated above, Mr. Balcarcel respectfully requests that this Court sentence him to time served. In the alternative, Mr. Balcarcel respectfully requests that the Court enter an order making clear that any greater sentence began to run on July 5, 2022.

Respectfully Submitted,

ROLMAN BALCARCEL-BAVAGAS

By: _____/s/_____
Counsel

John S. Martin, Esq.
VA Bar No. 34618
Counsel for Mr. Balcarcel

9

                                                Office of the Federal Public Defender
701 E. Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0867
Fax (804) 648-5033
Jack_Martin@fd.org